## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CATHIE VERES, on behalf of herself and others similarly situated, | : Case No. 1:24-cv-1356 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| SP DATA DIGITAL LLC and AMERICAN BROADBAND HOLDING COMPANY dba FASTWYRE BROADBAND, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

## CLASS ACTION COMPLAINT

Plaintiff Cathie Veres ("Plaintiff") brings this Class Action Complaint against Defendants SP Data Digital LLC ("SP Data") and American Broadband Holding Company dba Fastwyre Broadband ("Fastwyre") and alleges as follows:

1.      "Telemarketing calls are [] intrusive.  A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records.  Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991 ("TCPA"). Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227 (2012)).  As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms," *id.* at § 2(9)."  *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 649 (4th Cir. 2019).

2.      Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that SP Data was hired by Fastwyre to make telemarketing calls on its behalf.

However, such calls violated the TCPA when they were made to numbers on the National Do Not Call Registry and other putative class members listed after they had previously requested to no longer receive such communications.

## PARTIES

3.      Plaintiff is an individual.

4.      Defendant American Broadband Holding Company is a corporation.

5.      Defendant SP Data Digital LLC is a limited liability company with its principal place of business in this district.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7.      This Court has general personal jurisdiction over SP Data Digital LLC because the company is located in this district.

8.      This Court has specific personal jurisdiction over American Broadband Holding Company dba Fastwyre Broadband as it authorized calling into this district and signed a contract for telemarketing services with a company in Ohio.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were sent from this district and they targeted an area code in this district.

## BACKGROUND

10.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

11.     Section 227(c) of the TCPA requires the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential

telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1).

12.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id*.

14.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the National Do Not Call Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

15.     FCC regulations expressly require companies that engage in telemarketing to implement certain policies and procedures for maintaining an internal do not call list.  47 C.F.R. § 64.1200(d).

16.     Courts across the country have held that 47 U.S.C. § 227(c)(5) provides a private right of action for claims premised on violations of the TCPA implementing regulations promulgated pursuant to 47 U.S.C. §§ 227(c)(1)-(4), including for example claims under 47 C.F.R. § 64.1200(d).

17.     To engage in telemarketing, a company's do not call list procedures must satisfy six specific minimum requirements.  47 C.F.R. §§ 64.1200(d)(1)-(6).

18.     One of them is maintaining an internal do not call list.  *Id*. at § (d)(6).

19.     Another is training personnel regarding the existence and use of the internal do

3

not call list. *Id*. at § (d)(2).

20.    And still another is recording do not call requests and complying with them. *Id*. at § (d)(3).

21.    If a company fails to satisfy any one of these requirements, it is not entitled to engage in telemarketing (and violates the law by doing so), regardless of whether it satisfies all of the regulation's other requirements.

## FACTUAL ALLEGATIONS

22.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

23.    SP Data is a telemarketer for Fastwyre and made the calls at issue.

24.    At no point did Plaintiff consent to receiving telemarketing calls from Defendants.

25.    Plaintiff's telephone number, (740) XXX-2181, is a residential, non-commercial telephone number not associated with any business.

26.    Plaintiff placed this number on the National Do Not Call Registry in 2021.

27.    Plaintiff uses the number for personal, residential, and household reasons.

28.    Plaintiff has never been a customer of Fastwyre.

29.    During the fall of 2023, Plaintiff considered moving and utilizing Fastwyre's services.

30.    Shortly thereafter, Plaintiff began to receive telemarketing calls from Fastwyre.

31.    Plaintiff believes that between the fall of 2023 and May 13, 2024 (the date of the last call), she received more than 200 telemarketing calls and text messages.

32.    The text message is below:



33.    Despite Plaintiff's clear stop request, Plaintiff received subsequent calls from

Defendants.

34.    All of the calls were the same scripted telemarketing pitch.

35.     The representative of Defendants would ask information regarding their internet services.

36.     Plaintiff received so many calls that she started to send writings to Fastwyre through its website, including the following on October 21, 2023:



37.     However, the calls continued.

38.     The calls were so persistent that in February 2024, Plaintiff sent the following message:



39.     However, the calls continued, including more than a dozen similar calls after the February 2024 message was sent.

40.     The calls were so persistent that Plaintiff sent the following message on April 17, 2024:



41.    However, the calls continued with at least another dozen calls since Plaintiff sent this message.

42.    Plaintiff and the Class have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed.  In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## FASTWYRE'S LIABILITY FOR SP DATA'S CALLING

43.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

44.    In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

45.    The FCC has instructed that sellers such as Fastwyre may not avoid liability by outsourcing telemarketing to third parties, such as SP Data:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.  Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.  As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

46.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

47.     Fastwyre is liable for telemarketing calls placed by SP Data because it hired SP Data to make telemarketing calls on its behalf.

48.     Fastwyre was interested in hiring a company that could make telemarketing calls for Fastwyre, so it hired SP Data.

49.     To do so, it hired SP Data to orchestrate an *en masse* telemarketing campaign that was designed to contact prospective customers.

50.     Fastwyre also could have prohibited SP Data from contacting numbers on the Do Not Call Registry.

51.     It did not.

52.     Fastwyre required SP Data to only call using Fastwyre-approved scripts.

53.     Fastwyre allowed SP Data to use its trade name as if Fastwyre itself was calling.

54.     Fastwyre had the right to listen to all recorded calls.

55.     Fastwyre had the right to audit SP Data's calling, where it could have learned that it was contacting individuals on the National Do Not Call Registry.

56.     Fastwyre had the right to monitor and review SP Data's performance and to hold periodic meetings to ensure SP Data was meeting Fastwyre's standards and goals.

57.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such

information." *In re DISH Network*, 28 FCC Rcd. at 6592-93 ¶ 46.  Evidence of circumstances

pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon

the seller the burden of demonstrating that a reasonable consumer would not sensibly assume

that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## CLASS ACTION ALLEGATIONS

58.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if

fully stated herein.

59.    Plaintiff brings this action on behalf of herself and the following classes (the

"Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National Do Not Call Registry Class**: All persons in the United
> States (1) whose residential telephone numbers were on the
> National Do Not Call Registry for at least 31 days, (2) but who
> received more than one telemarketing call from or on behalf of
> Fastwyre, (3) within a 12-month period, (4) at any time in the
> period that begins four years before the date of filing this Complaint
> to trial.

> **Internal DNC Class:** All persons in the United States (1) who
> previously requested that their telephone numbers no longer be
> called at least 31 days previously, (2) but who received more than
> one telemarketing call from or on behalf of Fastwyre encouraging
> the purchase of Fastwyre's goods or services, (3) within a 12-month
> period (4) at any time in the period that begins four years before the
> date of filing this Complaint to trial.

60.    **Numerosity**: The exact number of Class members is unknown but based on the

*en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and

individual joinder in this case is impracticable.  Class members can be easily identified through

Defendants' records, or those of their agents.

61.    **Typicality**: Plaintiff's claims are typical of the claims of other Class members in

that Plaintiff and Class members sustained damages arising out of Fastwyre's telemarketing

calls, and Class members sustained similar injuries and damages as a result of Fastwyre's uniform illegal conduct.

62.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes.  Plaintiff has no interests that conflict with or are antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

63.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Classes include, but are not necessarily limited to, the following:

    a.     Whether SP Data called numbers on the National Do Not Call Registry;

    b.     Whether Fastwyre should be held liable for violations on its behalf; and

    c.     Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

64.     **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  There are hundreds of Class members, such that joinder of all members is impracticable.

65.     In addition to satisfying the prerequisites of Fed. R. Civ. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under Fed. R. Civ. P. 23(b) because:

a.     The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

b.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.     Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d.     Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Internal DNC Class)

66.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

67.     Defendants placed numerous calls for telemarketing purposes to Plaintiff and Internal DNC Class Members' telephone numbers.

68.     Defendants did so despite not having a written policy pertaining to "do not call" requests.

69.     Defendants did so despite not training their personnel on the existence or use of any internal "do not call" list.

70.     Defendants did so despite not recording or honoring "do not call" requests.

71.     Defendants placed two or more telephone calls to Plaintiff and Internal DNC Class members in a 12-month period.

72.     Plaintiff and Internal DNC Class members are entitled to an award of up to $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

73.     Plaintiff and Internal DNC Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call pursuant to 47 U.S.C. § 227(c)(5).

### COUNT II
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

74.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

75.     Defendants placed numerous calls for telemarketing purposes to Plaintiff and National Do Not Call Registry Class members' telephone numbers.

76.     Defendants did so despite not having appropriate consent to make such calls.

77.     Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

78.     Plaintiff and National Do Not Call Registry Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests

that the Court enter judgment against Defendants for:

      A.      Certification of the Classes as alleged herein;

      B.      Appointment of Plaintiff as representative of the Classes;

      C.      Appointment of the undersigned as counsel for the Classes;

      D.      Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. §

227(c)(5); and

      E.      Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


Dated: August 8, 2024             Respectfully submitted,

                               **/s/ Brian K. Murphy**
                               Brian K. Murphy (0070654)
                               Jonathan P. Misny (0090673)
                               Murray Murphy Moul + Basil LLP
                               1114 Dublin Road
                               Columbus, OH  43215
                               Telephone: 614.488.0400
                               Facsimile: 614.488.0401
                               Email: murphy@mmmb.com
                                     misny@mmmb.com

                               Anthony I. Paronich (*pro hac vice* to be filed)
                               Paronich Law, P.C.
                               350 Lincoln Street, Suite 2400
                               Hingham, MA 02043
                               Telephone: 508.221.1510
                               Email: anthony@paronichlaw.com

                               *Counsel for Plaintiff*